UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Bryan Cynova, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: |
| | ) | |
| Central Community School District 301, | ) | |
| Matthew Haug in his individual capacity, | ) | |
| Jon Puklin in his individual capacity, | ) | |
| Carrie Oslager in her individual capacity, | ) | Jury trial demanded on all counts |
| Deb Twenhafel in her individual capacity, | ) | |
| County of Kane, a body politic, Kane | ) | |
| County Sheriff's Office, and Krysta Kaus, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Bryan Cynova, through his attorneys, Di Monte & Lizak, LLC and Poltrock & Giampietro,

complains against the defendants as follows:

## INTRODUCTION

1.    Plaintiff, Bryan Cynova, a former student at Central High School (a/k/a Burlington

Central High School), Burlington, Illinois, Community School District 301, Burlington, Illinois,

seeks redress for Title IX of the Education Amendments of 1972, 20 U.S.C. §1681(a), hostile

educational environment sexual harassment liability against Central Community School District 301

Board of Education (District 301); for 42 U.S.C. §1983 hostile environment sexual harassment

liability against Matthew Haug in his individual capacity (Principal Haug), Vice Principal Jon

Puklin in his individual capacity (VP Puklin), Dean of Students Carrie Oslager in her individual

capacity (Dean Oslager), Department Chairman Deb Twenhafel in her individual capacity (Chairman

Twenhafel), and Krysta Kaus (Kaus); for willful and wanton misconduct for supervision against District 301, Principal Haug, VP Puklin, Dean Oslager, Chairman Twenhafel, Kane County, and the Kane County Sheriff's Office; for battery against Kaus; and for intentional infliction of emotional distress against Principal Haug, VP Puklin, Dean Oslager, Chairman Twenhafel, and Kaus.

JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. §§1331 and 1343(a)(3) because Plaintiff's claims arise under federal statutes, and supplemental jurisdiction over the related state law claims.

3.      Venue is proper in this district under 28 U.S.C. §1391(b) because the defendants reside in this district and the events giving rise to Plaintiff's claim occurred in this district.

PARTIES

4.      Plaintiff is a male individual who is a former student at Central High School, Burlington, Illinois, Community School District 301, Burlington, Illinois.

5.      District 301 at all times relevant is an organization responsible for operating and maintaining public schools, operated, controlled, monitored, and supervised the day-to-day activities and operations of Central High School, employed numerous administrators, teachers, and other personnel at Central High School, received federal financial assistance, and is a covered entity under Title IX, Education Amendments of 1972.

6.      Principal Haug was the principal of Central High School during the 2012-2013 and 2013 - 2014 school years.

7.      VP Puklin was the vice principal of Central High School during the 2012-2013 and 2013 - 2014 school years.

8.      Dean Oslager was a dean of students of Central High School during the 2012- 2013 and 2013 - 2014 school years.

9.      Chairman Twenhafel was a department chairman of Central High School during the 2012 - 2013 and 2013 - 2014 school years.

10.     Defendant County of Kane at all times relevant was a body politic and corporation pursuant to 55 ILCS 5/5-1001.

11.     The Kane County Sheriff's Office is controlled and operated under the direction of Donald E. Kramer, the duly elected Sheriff of Kane County.

12.     At all times relevant, Krysta Kaus was a Kane County Sheriff's Office deputy who was a School Resource Officer assigned to Central High School.

13.     At all times relevant, Kane County and the Kane County Sheriff's Office was the employer of Kaus.

14.     At all times relevant, District 301 was a joint employer of Kaus, along with Kane County and the Kane County Sheriff's Office.

<u>FACTS</u>

15.     Kaus worked at Central High School as a School Resource Officer (a/k/a a "liaison officer"), including during the 2012-2013 and 2013-2014 school years.  During these school years, Plaintiff was a junior and a senior respectively, at Central High School and a minor.

16.     On information and belief, Kaus was a Kane County Sheriff's Office patrol duty sheriff before being placed at Central High School.  Kaus told Plaintiff that the Kane County Sheriff's Office moved her from patrol to School Resource Officer at Central High School because her breakup with her ex-fiancé had damaged her mental health.  Kaus told Plaintiff that her then-

3

patrol lieutenant Pat Gengler (now undersheriff) told Kaus that she should seek mental health counseling.

17.     According to School District 301's website, at all relevant times, the district paid the Kane County Sheriff's Department $36,612.00 for the services of a "liason (sic) officer."  On information and belief, these or a portion of these monies were paid by District 301 to the Kane County Sheriff's Office for Kaus' services as a School Resource Officer at Central High School.

18.     According to the Kane County Sheriff's Office website, the:

"resource officers provide a positive relationship between students, staff, parents and the Sheriff's Office in promoting a safe environment for learning.  The resource officers also provide:

- Staff training for emergency response preparedness
- Supervision during passing periods
- Before and after school monitoring of vehicle traffic
- Enforcement of traffic and criminal laws
- Investigation of student to student complaints
- Investigation of parent and staff complaints
- Supervision of sporting events and other after-school events
- Educational presentations to students and staff
- Mentoring to students in need

19.     At all relevant times, Kaus had an office at Central High School.  Kaus' office was on the first floor in between Principal Haug's and Dean Oslagder's office in the Main Office.  Kaus' office had windows allowing third persons to see who was in her office.

20.     In August 2012, Plaintiff was beginning his junior year of high school at Central High School.  Plaintiff met Kaus for the first time at a Central High School sporting event, specifically, a volleyball game.  Kaus was at the sporting event in her capacity as the School Resource Officer.

21.     Using her power and authority flowing from her position with the Kane County Sheriff's Office and her power and authority flowing from her position within District 301, Kaus

4

sexually groomed and preyed upon Plaintiff just after he turned 17 years of age on August 1, 2012 and continued with this behavior through and beyond his May 30, 2014 Central High School graduation. Kaus offered Plaintiff special attention, manipulated the relationship between them so that it appeared that Plaintiff was the only one who understood Kaus and that Kaus needed Plaintiff and Plaintiff needed Kaus, admonished Plaintiff not to tell anyone about their special relationship lest she lose her job or hurt herself, and engaged in sexual behavior toward Plaintiff which altered Plaintiff's educational environment and adversely affected his ability to participate or benefit from District 301 programs on the basis of sex. For example:

a. In September 2012 Kaus told Plaintiff that if he ever was pulled over for a traffic violation, Plaintiff should mention her name.

b. On December 26 or 27, 2012, Plaintiff was stopped by Sergeant Branden Gentry of the Kane County Sheriff's Office, who was Kaus' former sergeant, for driving with bright lights on. Following Kaus' advice, Plaintiff mentioned her name to Sergeant Gentry. Sergeant Gentry became extremely angry and told Plaintiff that he would be writing an e-mail to Kaus telling her that her job was not to tell students to drop her name in order to get out of traffic tickets.

c. On or about January 7, 2013, Kaus removed Plaintiff from one of his school classes to talk to him about his December 26 or 27, 2012 traffic stop. Kaus told Plaintiff that she received an e-mail from Sergeant Gentry, who told her that he had stopped Plaintiff for driving with bright lights on and that Plaintiff mentioned Kaus' name to Sergeant Gentry. Kaus told Plaintiff that Sergeant Gentry was very upset with Kaus' behavior.

d.    Kaus removed Plaintiff from his school classes on several other occasions with the knowledge of his teachers.  For example, Kaus removed Plaintiff from his Spanish class on at least one other occasion, removed him from his Physical Education class on at least two occasions, and removed him from his Pre-Calculus class on at least one occasion.

e.    On or about May 18, 2013, Kaus attended a Central High School "Senior Day" in her capacity as School Resource Officer.  She asked Plaintiff if she could introduce herself to his parents and she did so.

f.    On or about May 30, 2013, the last day of Plaintiff's 2012-2013 school year, Plaintiff was taking his final examination in his Spanish 4 class.  Kaus opened the door to the classroom and said to Plaintiff in front of the class and the instructor: "I need to talk after you finish your test."  Kaus' behavior caused Plaintiff to believe he was in trouble and as a result he was unable to focus and received a D on the test.  When Plaintiff finished his test he spoke with Kaus who told him that she "just wanted to talk."  She walked Plaintiff to his locker and then to his car.  Kaus told Plaintiff that she would "miss" him and that it would be a "rough three months" (over the summer) without him.  She asked if Plaintiff wanted to do a ride-along with her because she was planning on working on patrol over the summer.  Kaus asked Plaintiff if he would be at certain school events like the graduation ceremony for the seniors and Plaintiff told her that he would attend the graduation for the senior class.  After the conversation, Kaus told Plaintiff that she was confronted by Dean Oslager and Principal Haug, who told her that her conduct was inappropriate and to stay away

6

from Plaintiff.

g.    Kaus attended the May 2013 senior graduation night and sought out Plaintiff.  At the end of the evening, Kaus slipped Plaintiff a piece of paper with her phone number on it, and told Plaintiff that he should not tell anyone that she gave him her phone number or she could lose her job.  Plaintiff did not give Kaus his phone number.

h.    On or about July 20, 2013, Plaintiff received a text message while in Wheaton, Illinois playing a baseball game for Elgin Legion Post 57. The text message was from a friend (Ryan Schuring) whose uncle (Kane County Sheriff's Office Deputy Phil Schuring) trained Kaus for the Sheriff's department. Ryan explained to Plaintiff that Kaus showed up at his graduation party and  wanted to see Plaintiff.   Plaintiff responded that he would be at the party after his baseball game.  Ryan told Plaintiff that Kaus said that she would wait for Plaintiff to arrive because she wanted to see Plaintiff.  After Plaintiff arrived at the party, Kaus spoke with Plaintiff for over three hours.  Kaus told Plaintiff that she was happy to see him and that it was rough not seeing him for a month and a half.  Kaus told Plaintiff about the amount of alcohol she had at the party, that she was going to have a beer with a co-worker, and that if she was not held to a higher standard because of her job, she would drink beer while driving. Kaus told Plaintiff that she wanted to stop by another graduation party and that she might come back later to see Plaintiff.  Plaintiff asked Kaus how he will know if she will come back later, and they discussed text messaging.   They discussed coming up with "fake names" to put into each other's phones to make sure that no one found out that they were texting each other.  Plaintiff was named,

7

"Robie" in Kaus' phone, and Kaus was named "Miranda" in Plaintiff's phone.

i.  On or about August 30, 2013, Kaus asked Plaintiff to meet her at the Burlington Fire Department where she had dropped off her squad car. The two met behind the fire station for about two hours. Kaus told Plaintiff that she recently caught her fiancé cheating on her and that they broke up. She also discussed that she was almost hit by a car directing traffic and the offender was charged with disobeying a police officer and given a court date. The conversation ended around 12 a.m. and Kaus came close to Plaintiff and asked him for a hug.

j.  The week of September 23, 2013, Kaus confided in Plaintiff that she was investigating a complaint about a Central High School student having an inappropriate relationship with special education teacher, Shari Piazza, that a staff member reported the incident, and that an investigation began. Kaus told Plaintiff details about the investigation, including the fact that the student was in the teacher's house. The teacher was fired from the school, and the incident was broadcasted in multiple newspapers.

k.  On or about November 22, 2013, Plaintiff and other students found a wallet in the Central High School parking lot. They turned the wallet over to Kaus at her Central High School office, where Plaintiff and the other students talked with Kaus for several hours and she gave them access to "drunk goggles" which they tested.

l.  On or about April 7, 2014, the first school day after spring break, Kaus approached Plaintiff at school and told him that she went through, a "very traumatic experience" over spring break. She described that a former Central High School student (Nick

8

Wiltsie) who graduated in 2013 asked to meet her at Panera Bread in South Elgin, Illinois, that he was now enrolled in the U.S. Army, that he took the meeting as a "date," that she took it as a greeting to "catch up," that a current student employed at Panera saw the two together, and that when Kaus saw the current student, she decided that the meeting with Wiltsie was inappropriate and decided to leave. Kaus told Plaintiff that she told Wiltsie that it was inappropriate for her to be seeing a former student even though Wiltsie pleaded that he was in the Army and that it didn't matter anymore. Kaus told Plaintiff that she eventually reported the incident to the Dean Oslager.

m. In the second semester of the 2013-2014 school year, Central High School authorized Plaintiff to participate in an internship with the Department of Driver Education and Physical Education. Plaintiff's duties were to assist the Department Chairman, Deb Twenhafel, with activities related to teaching her driver education course, organize and file learners permits, and communicate with other teachers in the department who needed assistance. In late March and early April, Plaintiff was granted access to the copier in the main office, which was not allowed for intern/student use due to new regulations, but office administrators gave Plaintiff access to the copier, which was next to Kaus' office at Central High School. Plaintiff regularly stopped by during school hours and said hello to Kaus after making copies.

n. In early April 2014, Kaus began lying to Chairman Twenhafel in order to spend time with Plaintiff at school. Kaus told Chairman Twenhafel that Kaus needed assistance in her office. Chairman Twenhafel instructed Plaintiff to drop the work that he had

9

for the day to help Kaus in her office. When arriving to Kaus' office, Kaus told Plaintiff that she really didn't need help, but used this as a ruse to spend time with Plaintiff.

o.  Plaintiff felt uncomfortable with Kaus' requests that he come to her office but did not want to refuse Kaus' requests since he viewed her as his mentor. In order to get Kaus to back off, Plaintiff told Kaus that he was dating another student at Central High School and that it was getting serious to the point where he was going to ask her to prom and introduce her to his parents.

p.  Plaintiff was in Kaus' office numerous times during school hours and was observed by administrators, including without limitation Principal Haug, VP Puklin, and Dean Oslager, teachers, and students in Kaus' office. Every time Kaus asked Plaintiff to meet Kaus in her office, he felt very uncomfortable and received outrageous amounts of weird looks from administrators, teachers, and students who were in the vicinity of Kaus' office. Principal Haug witnessed Kaus put her arms around Plaintiff and hug him in Kaus' office. Dean Oslager and VP Pulkin repeatedly observed Plaintiff in Kaus' office and told Plaintiff to go somewhere else and to find something to do. Plaintiff complied with their demands, even though it was Kaus who was arranging the "meetings." Dean Oslager, VP Pulkin and Principal Haug told Kaus to stay away from Plaintiff.

q.  Without Plaintiff asking her to do so, Kaus showed up to almost all of Plaintiff's Central High School home baseball games. School administrators and coaches observed Kaus' presence and her inappropriate amount of attention to Plaintiff.

10

r.     On or about April 22, 2014, at Central High School during school hours, Kaus noticed that Plaintiff was out of sorts and asked him what was wrong. Plaintiff told Kaus that he was upset with his girlfriend. That evening, Kaus texted Plaintiff to ask how he was doing, and the two texted about the girlfriend issue. Plaintiff told Kaus that he was going to break up with the girl, and that because he was fearful that students would retaliate against him for breaking up with the girl by spreading rumors about Plaintiff and Kaus, Plaintiff would not be talking to Kaus for some time, and maybe until the end of the 2013-2014 school year. Plaintiff told Kaus not to talk to him, not to ask him to meet in Kaus' office, and not to have any other contact with him.

s.     On prom night, April 26, 2014, Plaintiff received a text from Kaus (who apparently was at prom) around 10 p.m. saying, "Don't take offense to this, but I'm glad you're not [at the prom]." Kaus expressed her disappointment in Plaintiff, that his breakup with his girlfriend caused Kaus and he not to be able to talk, and that it was Plaintiff's fault. Kaus texted Plaintiff multiple times thereafter, but because Kaus' statements upset Plaintiff he ignored her further texts until about 2 a.m. on April 27. When Plaintiff finally texted Kaus, she told him she was bored and on one of the buses transporting Central High School students from Navy Pier to the hotel where prom was held. Kaus told Plaintiff that the administrators on the bus were looking at her awkwardly and wondering who she was texting this late at night. Kaus also expressed concern that the Kane County Sheriff's Office and Central High School administrators were thinking she and Plaintiff had a physical relationship and that she

11

could not handle the stress of people thinking that. The conversation continued until 5 a.m., when she arrived home.

t.  The week of May 5, 2014, Kaus texted Plaintiff in the afternoon asking him to meet her at the Burlington Fire Station, where she was dropping off her squad car.  Kaus questioned Plaintiff about his breakup with his girlfriend and told Plaintiff what an incredible person he was.

u.  On or about May 9, 2014, Plaintiff texted Kaus and asked her to meet in the Central High School gym after school.  The two met in the gym and Kaus asked Plaintiff to meet her later that night.  Plaintiff declined.

v.  On or about May 9, 2014, Kaus texted Plaintiff a news article about an inappropriate relationship between a Hampshire High School student and a teacher, told Plaintiff that she was sad because she and Plaintiff could not see each other as often as she wished and that she spent many days/nights/weekends on the couch at her mother's house in Lake Carroll, Illinois, crying and drinking excessively because she missed Plaintiff.

w.  May 21, 2014 was Plaintiff's last class day of high school.  On this day, Plaintiff played a baseball game for Central High School.  Kaus attended the game as the School Liaison Officer, and upon completion of the game, confronted Plaintiff in the parking lot in the midst of many others.  Plaintiff was extremely uncomfortable, and kept telling her that they cannot talk in front of everyone.  Kaus began to cry and told Plaintiff that their friendship will never be the same, and that, Plaintiff "will not be getting the same girl [Kaus] back."  Plaintiff did not know how to respond but at the

time thought that Kaus was still mad at him for breaking up with his girlfriend and how it affected his and Kaus' time together. Plaintiff told Kaus that he would be extremely pissed off if she tells him that she is disappointed in him again. Kaus told Plaintiff again not to tell his father about Kaus' interest in Plaintiff.

x. On or about May 22, 2014, Kaus texted Plaintiff numerous times while she was on duty at Central High School, invited Plaintiff to go fishing at her parent's lake house, and texted Plaintiff several pictures of her and the lake house.

y. On or about May 30, 2014, Kaus gave Plaintiff a letter expressing her feelings for him and giving him directions to her house so that he could come to her house after graduation that night to talk. The letter instructed him to not mention her house or the meeting by text message. Through text message, they agreed to meet at her house on Kelly Lane in Sycamore, Illinois at approximately 10:15 p.m. When Plaintiff arrived at Kaus' house, she was fresh out of the shower and dressed in short shorts and a tank top. Kaus asked Plaintiff in and she immediately hugged Plaintiff and felt his entire back, stomach, and chest with her hands. She poured herself a large glass of wine and asked Plaintiff to sit on the couch and talk, and drank excessively. Kaus told Plaintiff how happy she was to see him, how upset she was that he did not allow her to meet his parents and asked why Plaintiff would not sit next to her on the couch. Plaintiff was emotionally distraught by the situation and went to the bathroom where he threw up multiple times from the stress of the situation. When Plaintiff came back from the bathroom, Kaus was rubbing lotion up and down her legs in front of him. Kaus began talking about her feelings about and desire to be

13

intimate with, Plaintiff. The two discussed the events of the past few weeks with his recent breakup, multiple injuries to his chest and ribs due to a high school baseball game injury, and his stomach pain. Kaus proceeded to lie on the ground and rub more lotion up and down her legs. Plaintiff had the regional finial baseball game in the morning, and told Kaus that he wanted to leave and was not feeling well. Plaintiff left around Kaus' home around 1:30 a.m. and again was hugged and felt up. Kaus told Plaintiff that he was a very strong person to have a friendship like they had, and not have "intimate feelings" toward her.

z.      On or about May 31, 2014, Plaintiff was diagnosed with a concussion due to a the high school baseball game injury and advised Kaus of the diagnosis and his need for bed rest. Kaus used Plaintiff's vulnerability due to his head injury to further sexually manipulate and prey upon Plaintiff. Kaus told Plaintiff that it was very unfair that they had to spend time apart because of his previous breakup, and now his health is coming between them. Kaus told Plaintiff that it was unfair to her that he did not get his head injury treated earlier and now his injury is going to further affect their friendship.

aa.     Kaus proceeded to text Plaintiff continuously in the following day and weeks while she was on duty at Central High School. Kaus continued to pressure Plaintiff to see her and talked about her desire to have a physical relationship with Plaintiff. When Plaintiff explained his doctor's orders to rest, Kaus replied, "Telling a woman that she has to wait to hear how a person feels is the worst thing in the world a guy could do, why can't you just tell me. You shouldn't be treating me this way." Plaintiff told

14

Kaus he was uncomfortable with this and that she needed to relax and wait until his health improved. Plaintiff again began to experience stomach pain due to Kaus' contact with him.

bb. On or about June 8, 2014, Kaus sent Plaintiff multiple text messages inviting him to spend a weekend with her at her parents' lake house in Lake Carroll, Illinois, told Plaintiff she was in love with him, that he is the last person she thinks about when she goes to bed, and the first person she thinks about when she wakes up.

cc. During the week of June 9, 2014, Kaus texted Plaintiff that their friendship was "the only thing in her life that she was sure about" and that she had a graduation present for him that was a collection of notes she wrote to him over the previous months and that the notes might freak him out. Plaintiff told Kaus that he didn't want to see the notes and if she really wanted to give him a graduation present, to think of something else.

dd. On or about June 10, 2014, Kaus texted Plaintiff saying that if he wasn't cleared by the doctor to drive on June 13 to see her at the lake house, and if he didn't figure out how he felt about her, that Kaus would not care about him or their friendship anymore. Kaus stated that she "needs to consult her mother" to make herself feel better about Plaintiff's health situation and his not feeling the same way towards her. Kaus texted that she was "uncomfortable" with her feelings toward Plaintiff because if they were discovered, people would believe that she was a pedophile and she would lose her job. Kaus complained that she would be stereotyped for liking a person much younger than her, and that she could not handle the thoughts of others.

15

She also texted that she wouldn't be able to handle the public humiliation.

ee. On or about June 13, 2014, Plaintiff's doctor cleared him to drive and her passed a number of tests evaluating his vestibular system. Plaintiff told Kaus about his doctor's finding and she invited Plaintiff to her home the next evening. When he arrived at the residence, Plaintiff saw a loaded rifle that looked similar to an AR-type rifle sitting on the staircase near the entrance to the front door. There was also a handgun on the table, and he immediately asked Kaus to move it because he was uncomfortable with the guns. Kaus did not move the guns. Kaus gave Plaintiff a hug and proceeded to feel him up, rubbing his back, chest, and stomach for a few minutes. Kaus insisted on telling Plaintiff's father about their relationship. Plaintiff did not want to see Kaus hysterical and so explained that he did not want to talk about a relationship rather than telling her that he was not interested. Kaus again criticized Plaintiff for not coming to see her enough during his time in high school, told him how sad she was that he only came to see her in the gym on May 9, 2014, and that Plaintiff asking to come see her on May 9 was her favorite moment because, for once, Plaintiff initiated a "meeting" and talking. At the end of the night, Kaus told Plaintiff that she enjoyed that he was "slow" to gather his thoughts, and laughed at him saying that it was enjoyable that he was "mentally handicapped" due to his head injury. Kaus hugged and felt Plaintiff up again, and he left the residence around 2 a.m.

ff. Over the following weeks and months, Kaus continued to stalk Plaintiff, texting Plaintiff continuously pressuring him for a physical relationship, inviting him to her

16

home, calling and texting him at all hours of the night and day about her personal problems with her ex-fiancé, telling him that he could have anything he wanted from her, telling Plaintiff that their friendship and her feelings for him were "once in a lifetime," and using Plaintiff's vulnerability due to his head injury to further sexually manipulate and prey upon Plaintiff. Plaintiff told Kaus that he could not handle the stress she was creating for him, that the friendship between them had to change, that he needed to focus on his health, and continued to attempt to distance himself from Kaus.

gg.    On or about July 6, 2014, Kaus gave Plaintiff an engagement ring, saying that it was the ring that her ex-fiancé gave her and that she wanted Plaintiff to have the ring as a symbol of her love for him.

hh.    In the following months, and despite Plaintiff's requests that Kaus stop pursuing him, she texted or called him almost every day about her feelings for him and told Plaintiff that she might have a mental breakdown because she could not handle not seeing him, and because of his moving to Iowa for college. Kaus' pursuit of Plaintiff continued throughout the summer of 2014 and even after he moved to Iowa to attend college.

ii.    Kaus texted Plaintiff more than 8,000 times just over a three-month period and at times texted him hour after hour throughout the day.

18.    The aforementioned constituted hostile educational environment sexual harassment of Plaintiff. As a result, Plaintiff suffered severe emotional distress and physical injury and his high school grades and education suffered. For example, his Spanish grade dropped as a result of Kaus

interrupting Plaintiff during his Spanish test. He vomited, had severe stomach pain, severe head pain, nightmares, anger, lack of social enjoyment, sleeplessness, loss of enjoyment of life, problems eating, problems focusing on his high school work and activities, depression, anxiety attacks and felt like his brain had been poisoned during his head injury. In the summer of 2014, he moved from home to his brother's residence in Chicago for two weeks in order to get away from Kaus. He changed his cell phone number. The physical and mental health issues continued during his college months and he received therapy and counseling due to Kaus' conduct. Plaintiff's doctor told him that recovery from his concussion injury was delayed because of the stress Kaus created for Plaintiff. Plaintiff's college grades have suffered as a proximate result of Kaus' wrongful conduct. The aforementioned resulted in Plaintiff's inability to participate in a paid college internship, his family incurring expenses related to Plaintiff's health care and traveling to and from Iowa to provide emotional and parental support to Plaintiff, and medical expenses. Prior to Kaus' sexual harassment of Plaintiff, Plaintiff never experienced problems with school, was an honor roll student and never had problems participating in school extracurricular activities.

19.     Various District 301 and Central High School officials and administrators, including, without limitation, Principal Haug, VP Puklin, Dean (now Vice Principal) Oslager, and Chairman Deb Twenhafel had authority vested in them by District 301 to supervise the conduct and actions of Kaus and take corrective measures to stop her sexual harassment of Plaintiff but failed to use their authority to end Kaus' improper conduct.

20.     District 301, Principal Haug, VP Puklin, Dean Oslager, Chairman Deb Twenhafel, Kane County, and the Kane County Sheriff's Office were advised, directly observed, or otherwise learned of Kaus' sexual grooming and sexual predation of Plaintiff, and the sexually hostile

educational environment Kaus caused Plaintiff. As described above, Kaus openly failed to maintain proper boundaries and Central High School and Kane County Sheriff's Office authorities told Kaus that her conduct toward Plaintiff was inappropriate and to stay away from him.

21.     Nonetheless, these officials and administrators with the power and responsibility to remedy Kaus' sexual harassment of Plaintiff failed to perform any reasonable or adequate investigation of Kaus' conduct, failed to discipline Kaus, and failed to remove Kaus from Central High School.

22.     These officials and administrators with the power and responsibility to remedy Kaus' sexual harassment of Plaintiff acted with deliberate indifference towards Plaintiff's constitutional rights.

23.     Kane County and the Kane County Sheriff's Office failed to perform any reasonable or adequate investigation of Kaus' conduct, failed to discipline Kaus, and failed to remove Kaus from Central High School.

24.     Kane County and the Kane County Sheriff's Office acted with deliberate indifference towards Plaintiff's constitutional rights.

### COUNT I - Jury trial demanded
### Violations of Title IX (20 U.S.C. §1681 et seq.) v. District 301

25.     Plaintiff reasserts and incorporates herein each and every allegation in the preceding paragraphs as if set forth fully in this count of the Complaint.

26.     Kaus' sexual conduct toward Plaintiff was unwelcome, was based on Plaintiff's sex, and was so pervasive or severe that it altered the conditions of his education. Further, Plaintiff's concussion injury made him vulnerable to Kaus' advances and Kaus knowingly used Plaintiff's

concussion to further her sexual exploitation of Plaintiff.

27.     District 301 receives federal financial assistance for its public schools, bringing it within the ambit of Title IX.

28.     District 301 intentionally, willfully, and without justification acted to deprive Plaintiff on the grounds of his sex, of his rights, privileges, and immunities secured to him by the laws of the United States, particularly his rights to be free from discrimination in education on the basis of his sex as provided by Title IX of Education Amendments of 1972, 20 U.S.C. §1681.

29.     Administrators of Central High School and officials of District 301 had knowledge that Plaintiff had been subjected to sexual advances and other verbal and physical conduct of a sexual nature by Kaus and they had the authority to take corrective action against Kaus.

30.     District 301, despite knowledge and having adequate opportunity to learn of the misconduct of its agents and employees, failed adequately to respond.  Its refusal to take action amounted to deliberate indifference to discrimination.  As a result, District 301 adopted, approved, and ratified the acts, omissions, and misconduct of Kaus and the remaining defendants.

## COUNT II - Jury trial demanded
### Violations of 42 U.S.C. §1983 v. Haug, Puklin, Oslager, Twenhafel, and Kaus

31.     Plaintiff reasserts and incorporate herein each and every allegation in the preceding paragraphs as if set forth fully in this count of the Complaint.

32.     Kaus violated Plaintiff's constitutional right to bodily integrity under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

33.     By allowing Kaus' improper conduct to continue, Haug, Puklin, Oslager, and Twenhafel violated Plaintiff's constitutional right to bodily integrity under the Due

Process Clause of the Fourteenth Amendment to the United States Constitution.

34.     Haug, Puklin, Oslager, Twenhafel, Kaus, the school board, school administrators and school employees all were acting under color of state law.

35.     Plaintiff continuously and repeatedly was subjected to a clear and persistent pattern of sexual harassment and other inappropriate conduct by Kaus, a school employee and school agent.

36.     At all relevant times, District 301 and Haug, Puklin, Oslager, and Twenhafel had a duty to provide and ensure an educational environment for Plaintiff free from sexual advances, other verbal and physical conduct of a sexual nature, and to enforce the regulations, rules, and laws necessary to protect Plaintiff from acts of sexual abuse.

37.     District 301, Haug, Puklin, Oslager, and Twenhafel, failed to properly train and supervise Kaus, and failed to properly investigate Kaus' conduct.  These defendants had actual knowledge of Kaus' sexual harassment of Plaintiff and each, through Haug, Puklin, Oslager Twenfafel and others, and through Sergeant Gentry, had the authority to take corrective action against Kaus.

38.     Haug, Puklin, Oslager, Twenfafel and others turned a blind eye toward Kaus' conduct and tacitly approved this unconstitutional conduct by their inaction.

39.     Haug, Puklin, Oslager, Twenfafel intentionally, willfully, and without justification and with deliberate indifference and disregard for Plaintiff's safety and well-being, did deprive Plaintiff, on grounds of his sex, his rights, privileges, and immunities secured to him by the United States Constitution and the laws of the United States, including, but not limited to, his rights to equal protection of law, due process, and to be free from sexual abuse as provided by the Fourteenth Amendment of the United States Constitution and his right to privacy and to be free from violations

of bodily integrity as protected by the Fourth, Fifth, Ninth, and Fourteenth Amendments of the United States Constitution, in violation of 42 U.S.C. §1983.

40.     This deliberate indifference and conscious disregard for Plaintiff's rights directly and proximately caused constitutional harms to Plaintiff, including severe emotional distress and related physical injuries and other damages.

### COUNT III - Jury trial demanded
### Willful and Wanton Misconduct for Supervision v. - District 301, Haug, Puklin, Oslager, and Twenhafel

41.     Plaintiff reasserts and incorporates herein each and every allegation in the preceding paragraphs as if set forth fully in this count of the Complaint.

42.     At all times relevant, Kaus was an agent or employee of District 301.

43.     At all times relevant, Kaus was under the supervision of District 301.

44.     At all times relevant, Kaus maintained an office at Central High School and used District 301 systems, materials, and equipment to do her job as School Resource Officer.

45.     At all times relevant, Kaus was able to use Plaintiff as a resource to perform her job as School Resource Officer and did so with the prior authorization of Central High School administrators.

46.     Based on the conduct described above, District 301 knew or should have known of the fact that Kaus posed a substantial risk and danger to male students, and that Kaus exhibited propensities for engaging in sexual harassment, sexual abuse, or otherwise inappropriate behavior toward male students, including Plaintiff.

47.     District 301, through its employees and administrators, and Haug, Puklin, Oslager, and Twenhafel, in their capacities as administrators and officials of Central High School and of

District 301, owed a duty to Plaintiff to refrain from willful and wanton misconduct in the supervision or their employees, including Kaus, which would endanger the safety and psychological well-being of Plaintiff.

48.     District 301 and Haug, Puklin, Oslager, and Twenhafel, despite knowledge of Kaus' improper conduct toward Plaintiff, breached their duties to Plaintiff by committing the following willful and/or wanton acts and/or omissions:

   a.     Failing to properly monitor and supervise Kaus while she was with students;

   b.     Failing to undertake a thorough investigation of their observations of Kaus' improper conduct;

   c.     Failing to hire and/or retain competent and adequately trained and adequately screened school personnel; and

   d.     Failing to set up adequate training, procedures, and lines of communication to report inappropriate misconduct.

49.     By failing to do the aforementioned acts, District 301, Haug, Puklin, Oslager, and Twenhafel have shown deliberate indifference and a conscious disregard for the safety and psychological well-being of Plaintiff and other male students, amounting to willful and wanton misconduct.

50.     As a direct and proximate result of District 301, Haug, Puklin, Oslager, and Twenhafel's willful and wanton misconduct in the supervision of Kaus, and as a direct and proximate result of its deliberate indifference towards Kaus' sexual harassment of Plaintiff, Plaintiff suffered permanent psychological and emotional injuries in the following ways:

   a.     By subjecting Plaintiff to further inappropriate touching by Kaus;

b.      By subjecting Plaintiff to further interference with his education;

c.      By subjecting Plaintiff to further emotional distress, mental anguish, and embarrassment.

**COUNT IV - Jury trial demanded**
**Willful and Wanton Misconduct for Supervision v. Kane County and Kane County Sheriff's Office**

51.     Plaintiff reasserts and incorporate herein each and every allegation in the preceding paragraphs as if set forth fully in this count of the Complaint.

52.     At all times relevant, Kane County and the Kane County Sheriff's Office was an employer of Kaus.

53.     Based on the conduct described above, Kane County and the Kane County Sheriff's Office knew or should have known of the fact that Kaus posed a substantial risk and danger to male students at Central High School, and that Kaus exhibited propensities for engaging in sexual harassment, sexual abuse, or otherwise inappropriate behavior toward male students, including Plaintiff.

54.     Kane County and the Kane County Sheriff's Office owed a duty to Plaintiff to refrain from willful and wanton misconduct in the supervision or their employees, including Kaus, which would endanger the safety and psychological well-being of Plaintiff.

55.     Despite this knowledge, Kane County and the Kane County Sheriff's Office failed to exercise due care in the supervision of Kaus in that it did little to properly probe incidences observed by administrators, or other employees or agents of Kane County and the Kane County Sheriff's Office of Kaus' inappropriate conduct with Plaintiff, her questionable mental health, and failed to take corrective action necessary to prevent Kaus from continuing to pose a threat to Plaintiff

and other male students.

56.     Kane County and the Kane County Sheriff's Office breached their duties to Plaintiff by committing the following willful and/or wanton acts and/or omissions:

a.      Failing to properly monitor and supervise Kaus while she was with students;

b.      Failing to undertake a thorough investigation of their observations of Kaus' improper conduct;

c.      Failing to hire and/or retain competent and adequately trained and adequately screened school personnel; and

d.      Failing to set up adequate training, procedures, and lines of communication to report inappropriate misconduct.

57.     By failing to do the aforementioned acts, Kane County and the Kane County Sheriff's Office have shown deliberate indifference and a conscious disregard for the safety and psychological well-being of Plaintiff and other male students of Central High School, amounting to willful and wanton misconduct.

58.     As a direct and proximate result of Kane County's and the Kane County Sheriff's Office's willful and wanton misconduct in the supervision of Kaus, and as a direct and proximate result of its deliberate indifference towards Kaus' sexual harassment of Plaintiff, Plaintiff suffered permanent psychological and emotional injuries in the following ways:

a.      By subjecting Plaintiff to further inappropriate touching by Kaus;

b.      By subjecting Plaintiff to further interference with his education;

c.      By subjecting Plaintiff to further emotional distress, mental anguish, and embarrassment.

59.     As a result of Kane County's and the Kane County Sheriff's Office's negligent supervision of Kaus, Plaintiff has suffered severe emotional distress and related physical injuries, and other damages.

### COUNT V - Jury trial demanded
### Assault and Battery v. Kaus

60.     Plaintiff reasserts and incorporates herein each and every allegation in the preceding paragraphs as if set forth fully in this count of the Complaint.

61.     Based on Kaus' conduct described above, Kaus intended to contact or touch Plaintiff in a harmful and offensive manner and Kaus did in fact place Plaintiff in imminent fear of such harmful and offensive contact or touching.

62.     Plaintiff, as a minor high school student at the time of the sexual conduct, did not have the capacity to consent to sexual conduct with a School Liaison Officer at Central High School. See, e.g., Chancelor v. Pottsgrove, 502 F.Supp.2d 695 (E.D. Pa. 2007).

63.     As described above, Kaus directly inflicted harm on Plaintiff.

64.     As a result of Kaus' conduct, Plaintiff suffered, and continues to suffer, emotional distress.

### RELIEF REQUESTED

WHEREFORE, Plaintiff demands that judgment be entered against defendants on the above claims applicable to such parties and order that the following damages be awarded:

a.      Compensatory damages including emotional distress damages in excess of One Million Dollars;

b.      Punitive damages in excess of One Million Dollars as against all defendants other

than District 301, Kane County, and the Kane County Sheriff's Office;

c.      Reasonable attorneys' fees and costs;

d.      Expert witness fees and costs;

e.      Interest;

f.      Such other relief as the Court may deem appropriate.

Respectfully submitted,

BRYAN CYNOVA

Dated: May 14, 2015          /s/ Margherita M. Albarello

Margherita M. Albarello
ARDC No. 6187375
Peter M. Follenweider
ARDC No. 6307796
Di Monte & Lizak, LLC
216 W. Higgins Road
Park Ridge, IL 60068
847-698-9600
Fax: 847-698-9624
Email: **malbarello@dimontelaw.com**

Wayne Giampietro
Poltrock & Giampietro
123 W. Madison St. #1300
Chicago, IL 60602
312-236-0606
Fax: 312-236-9264
Email: **wgiampietro@wpglawyers.com**
ARDC No. 0947776